IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| J.L. FRENCH AUTOMOTIVE CASTINGS, INC.,[1] | ) ) | Case No. 06-10119 ( ) (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

## APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF CONWAY MACKENZIE & DUNLEAVY AND CM&D CAPITAL ADVISORS LLC AS FINANCIAL ADVISORS TO THE DEBTORS AND DEBTORS-IN-POSSESSION

The above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), submit this application for entry of an order under section 327(a) of title 11 of the United States Code, authorizing the employment and retention of Conway MacKenzie & Dunleavy and CM&D Capital Advisors LLC (collectively, "CM&D"), as financial advisors for the Debtors. In support of this application, the Debtors respectfully state as follows:[2]

### Jurisdiction

1. This Court has jurisdiction over this application under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue

---

[1] The Debtors are: J.L. French Automotive Castings, Inc., Nelson Metal Products Corporation, Allotech International Inc., Shore Line Industries, Inc., J.L. French Automotive LLC, French Holdings, Inc., J.L. French Corporation, J.L. French Automotive Castings New York, Inc., J.L. French Automotive Castings Illinois, Inc.

[2] The facts and circumstances supporting this Application are set forth in the Affidavit of James M. Amodeo, Chief Financial Officer of J.L. French Automotive Castings, Inc., in Support of First Day Motions (the "First Day Affidavit"), filed contemporaneously herewith.

of these proceedings and this application is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are sections 327 and 328 of chapter 11 of title 11 of the United States Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2014(a).

## Background

3. On the date hereof (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are operating their businesses and managing their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or statutory committee has yet been appointed in these Chapter 11 Cases.

4. The other facts and circumstances further supporting this application are more fully set forth in the First Day Affidavit.

## Relief Requested

5. Pursuant to sections 327 and 328 of the Bankruptcy Code, the Debtors seek to employ and retain CM&D as their financial advisor during these Chapter 11 Cases, effective as of the Petition Date. CM&D will provide financial advisory and other related services to the Debtors in accordance with the Engagement Agreement between the parties (as defined below).

6. The Debtors further request approval of the indemnification provisions set forth in the Engagement Agreement.

### Qualifications

7.  CM&D is well-qualified to perform financial advisory services for the Debtors. CM&D has extensive experience providing financial advisory services in reorganizations proceedings, and enjoys an excellent reputation for services it has rendered on behalf of both debtors and creditors in large and complex chapter 11 cases throughout the United States. Most recently, CM&D has provided financial advisory services to Oxford Automotive, Inc., Intermet Corporation, Jernberg Industries, Inc., MCSi, Inc., NEXPAK, AETNA Industries, Inc., Venture Industries, Inc., Talon Automotive Group, Inc., LASON, Inc., and Key Plastics L.L.C.

8.  On October 31, 2005, the Debtors engaged CM&D to provide financial advisory services to the Debtors. Since this time, CM&D has developed a great deal of institutional knowledge regarding the Debtors' operations, finance and systems. Such experience and knowledge will enable CM&D to represent the Debtors in an effective, efficient, and timely matter. CM&D's services will be very valuable to the Debtors in their efforts to reorganize; indeed CM&D's services are necessary to assist the Debtors in maximizing the value of their estates and successfully reorganizing their business.

9.  CM&D is willing to act on behalf of the Debtors, subject to the terms of the October 31, 2005 engagement agreement and the jurisdiction and supervision of this Court.

### Disinterestedness

10. CM&D has in the past represented, and likely in the future will represent, creditors or equity security holders of the Debtors in matters unrelated to these Chapter 11 Cases. To the best of CM&D's knowledge, and except as disclosed in the Affidavit of Donald S.

MacKenzie (the "MacKenzie Affidavit"), filed concurrently herewith and attached as <u>Exhibit A</u>, CM&D (i) has no connection with the Debtors, their creditors, equity security holders, or other parties-in-interest, or their respective attorneys and accountants, the United States Trustee or any person employed in the office of the United States Trustee, in any matter related to the Debtors and their estates, (ii) does not hold any interest adverse to the Debtors' estates, and (iii) believes it is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.[3]

11. As of the Petition Date, CM&D did not hold a prepetition claim against the Debtors for services rendered.

12. CM&D will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, CM&D will provide the Court with a supplemental affidavit.

13. Other than its own employees, CM&D has agreed not to share the compensation to be paid for professional services rendered in connection with these Chapter 11 Cases with any person or firm.

### Scope of Services

14. CM&D and the Debtors entered into an agreement dated October 28, 2005 and executed October 31, 2005 (the "Engagement Agreement"), pursuant to which CM&D has been providing financial advisory services to the Debtors in connection with their restructuring

---

[3] CM&D was employed by the Debtors prior to the Petition Date as allowed by section 1107(b) of the Bankruptcy Code.

efforts. A copy of the Engagement Agreement is attached as Exhibit B. The services to be provided by CM&D in accordance with the terms of the Engagement Agreement during the course of these Chapter 11 Cases, include, but are not limited to, the following:[4]

    A. Assistance to the Debtors in the preparation of financial related disclosures required by the Court, including the Schedules of assets and liabilities, the statement of financial affairs and monthly operating reports;

    B. Assistance to the Debtors with information and analyses required pursuant to the Debtors' financing;

    C. Assistance with the identification and implementation of short-term cash management procedures;

    D. Advisory assistance in connection with the development and implementation of key employee retention and other critical employee benefit programs;

    E. Assistance with the identification of executory contracts and leases and performance of cost/benefit evaluations with respect to the affirmation or rejection of each;

    F. Assistance to Debtors' management team and counsel focused on the coordination of resources related to the ongoing reorganization effort;

    G. Assistance in the preparation of financial information for distribution to creditors and others, including, but not limited to, cash flow projections and budgets, cash receipts and disbursement analysis, analysis of various asset and liability accounts, and analysis of proposed transactions for which Court approval is sought;

    H. Attendance at meetings and assistance in discussions with potential investors, banks and other secured lenders, any official committee(s) appointed in these Chapter 11 Cases, the United States Trustee, other parties-in-interest and professionals hired by the same, as requested;

    I. Analysis of creditor claims by type, entity, and individual claim, including assistance with development of databases, as necessary, to track such claims;

    J. Assistance in the preparation of information and analysis necessary for the confirmation of a plan of reorganization in these Chapter 11 Cases, including information contained in the disclosure statement;

---

[4] The description of the Engagement Agreement in this Application is a summary. To the extent that this application and the terms of the Engagement Agreement are inconsistent, the terms of the Engagement Agreement shall control.

K. Assistance in the evaluation and analysis of avoidance actions, including fraudulent conveyances and preferential transfers;

L. Litigation advisory services and expert testimony on case related issues as required by the Debtors; and

M. Render such other general business consulting or such other assistance as Debtors' management or counsel may deem necessary that are consistent with the role of a financial advisor and not duplicative of services provided by other professionals in this proceeding.

15. The services that CM&D will provide to the Debtors are necessary to enable the Debtors to maximize the value of their estates, and ensure a smooth restructuring. The Debtors believe that these services will not duplicate the services that other professionals will be providing the Debtors in these Chapter 11 Cases. Although the Debtors also wish to retain Miller Buckfire & Co. LLC ("MB") as investment bankers, the two firms will each be performing unique services for the Debtors. While MB will focus on seeking out, evaluating, and potentially consummating possible reorganizing transactions, CM&D will focus on evaluating, overseeing, and assisting with the financial aspects of the Debtors' operations. In short, CM&D will carry out distinct functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid the unnecessary duplication of services.

## Terms of Retention

16. The Debtors understand that CM&D intends to apply to the Court for allowance of compensation and reimbursement of expenses for its services in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, corresponding local bankruptcy rules, any orders of this Court and guidelines established by the United States Trustee. The customary hourly rates, subject to periodic adjustments, charged by CM&D professionals anticipated to be assigned to this case are as follows:

| | |
|---|---|
| Senior Partners | $525-595 |
| Partners | $425-495 |
| Directors | $350-375 |
| Senior Associates | $315-350 |
| Associates | $235-275 |
| Paraprofessionals | $110-120 |

17. In addition to compensation for professional services rendered by CM&D personnel, CM&D will seek reimbursement for reasonable and necessary expenses incurred in connection with the Debtors' Chapter 11 Cases.

18. The Debtors have paid CM&D a total of $1,490,034.11 for professional services performed and expenses incurred to date, all of which was paid during the year preceding the Petition Date for financial advisory services substantially similar to those proposed in this application. The Debtors have fully paid CM&D for all services rendered prepetition to the Debtors. Further, CM&D's current estimate is that it has received unapplied advance payments from the Debtors in excess of prepetition billings in the amount of $150,000.00 as a retainer fee. The Debtors and CM&D have agreed that any portion of the retainer fee not used to compensate CM&D for it prepetition services and expenses will be held and applied against its final postpetition billing and will not be placed in a separate account.

### Indemnification Provisions

19. In addition, the Debtors have agreed, subject to court approval, to indemnify CM&D in accordance with the indemnification provisions of the Engagement Agreement, from and against any actions or claims arising out of or in connection with CM&D's retention by the Debtors, except for any such liability for losses, claims, damages, or liabilities

incurred by the Debtors that are a direct result of CM&D's gross negligence or willful misconduct.

20. The Debtors submit that such indemnification is standard in the specialized financial advisory industry and that the provision of such indemnification by the Debtors is fair and reasonable considering CM&D's qualifications and the expectations of other financial advisors in connection with engagements of this scope and size. Substantially similar provisions have been negotiated with certain U.S. Trustees and approved by courts in this circuit and in other courts in other chapter 11 cases: In re United Artists Theatre Co., 315 F.3d 217, 232 (3d Cir. 2003); In re Exide Techs., Case No. 02-11125 (Bankr. D. Del. Aug. 21, 2002); In re Ameriserve Food Distribution, Inc., Case No. 00-0358 (Bankr. D. Del. May 9, 2000) ;In re Jillian's Entm't Holdings, Inc., Case No. 04-033192 (Bankr. W.D. Ky. July 12, 2004); In re LTV Steel Co., Inc., 2001 U.S. Dist. LEXIS 25338 (N.D. Ohio Nov. 14, 2001); In re Pittsburgh-Canfield Corp., Case No. 00-43394 (Bankr. N.D. Ohio December 12, 2000); In re EWI, Inc., 208 B.R. 885 (Bankr. N.D. Ohio May 8, 1997); In re Phar-Mor, Inc., Case No. 92-41599 (Bankr. N.D. Ohio February 10, 1994); In re Ames Dep't. Stores, Inc., Case No. 01-42217 (Bankr. S.D.N.Y. Oct. 2001); In re Halpern, 248 B.R. 43, 45-46 (Bankr. S.D.N.Y. 2000).

21. The terms and conditions of the Engagement Agreement, including the indemnification provisions contained therein, were negotiated by the Debtors and CM&D at arm's length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of CM&D's proposed retention, are reasonable and in the best interests of the Debtors, their

estates and creditors. Accordingly, as part of this application, the Debtors request that the Court approve the indemnification provisions.

## Notice

22. Notice of this Motion has been given to the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Debtors' proposed postpetition lenders; (iii) the administrative agents for the Debtors' prepetition secured lenders; and (iv) the indenture trustee for the Debtors' prepetition senior subordinated notes. Following the first day hearing in this case, notice of the Motion will be given to (a) creditors holding the consolidated forty largest unsecured claims against the Debtors as identified in the Debtors' petitions; and (b) those persons who have requested notice pursuant to Rule 2002 of the Federal Rules of Bankruptcy Procedure. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

23. No prior application for the relief requested herein has been made to this or any other Court.

### No Prior Request

23. No prior application for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Debtors respectfully request the entry of an order, substantially in the form attached (i) authorizing the Debtors to employ and retain CM&D as their financial advisors effective as of the Petition Date; (ii) approve the Engagement Agreement and its indemnification provisions; and (iii) granting such further relief as the Court deems appropriate.

Dated: February 9, 2006

J.L. French Automotive Castings, Inc., Nelson Metal Products Corporation, Allotech International Inc., Shore Line Industries, Inc., J.L. French Automotive LLC, French Holdings, Inc., J.L. French Corporation, J.L. French Automotive Castings New York, Inc., J.L. French Automotive Castings Illinois, Inc.

By: _____
James Amodeo
Chief Financial Officer, J.L. French Automotive Castings, Inc.

10

68700-064\DOCS_DE:115101.3